We'll move now to the next case on the calendar, which is No. 20-1097, Kaye v. Merck & Co. for the appellant, Mr. Balin. Good afternoon. Good morning, Your Honors. Etan Balin for the Kaye Plaintiffs. Your Honors, this case concerns bait-and-switch and deception. The uncontradicted evidence in the record is that the Merck defendants called Kaye and the class members and used a preset script that asked permission to fax them an invitation to a telesymposium sponsored by Merck entitled, quote, Important Clinical Information about Schizophrenia and Bipolar Disorder. This script did not utter a word indicating that Merck's products or services were going to be advertised at the program. Accordingly, Kaye and the class members' agreement to be faxed the unconfirmed information to the class members and the class members' agreement to be faxed the unconfirmed information to the class members and the class members' agreement to be faxed. Well, actually, Your Honor, the record evidence doesn't show that it doesn't support that assumption. In fact, in this court's case, Boringer, which this court remanded back to the district court on the issue of whether there were products or services sold at an advertised symposium, it actually turned out that there were no products and services sold at the advertised symposium. Boringer suggested that it was at least sufficiently plausible so that people should assume that that was there. In the particular case, I mean, it may happen that occasionally a pharmaceutical company will do something that isn't bound, done to sell its product, but that Boringer suggests that the common idea is that it would be. But, Your Honor, plausibility does not summary judgment make. In other words... Well, in fact, just sorry, counsel. In fact, we said in Boringer, we said businesses are always eager to promote their wares and usually do not fund presentations for no business purpose. And so your client got a phone call that said, here's a conference sponsored by Merck. Just reading Boringer, wouldn't one assume that it's unlikely that Merck is sponsoring it for no business purpose? No, Your Honor, because the Boringer case also specifically recognized without going to the symposium, it would actually be difficult for any plaintiff to know whether the products or services were advertised. That was a line that was specifically written by this court in Boringer. And that's the difference between plausibility and summary text of the invitation that was actually faxed to Dr. K differ from the request to send the information that was contained in the script for the caller? It didn't differ at all. So hold on, hold on, hold on. So if it didn't differ, why did the defendant not have permission to send exactly the invitation that it sent? Because, Your Honor, the question is not whether it had permission to send a fax or an invitation about a clinical symposium. The question is under the TCPA, whether the defendant had the prior express consent, and I emphasize express, from the recipient or counsel, or counsel, you're caught between two impossible positions. Either you say, as was just said, Judge Cardinal, they got exactly, precisely what they agreed to, or they didn't get what they exactly agreed to, because there might have been an ulterior motive, which they would have, had they known about the ulterior motive, they would have said no. And then you come back to my question, which is to the extent there is an ulterior motive, isn't it more than at least plausible that there would be such an ulterior motive, and more than plausible? So either they got exactly what they wanted, or if there was something else, it was something else that they should have known about. Well, Your Honor, if, let me just give an example. If a company in Florida sent me a fax saying that they were going to have a lecture about the environmental issues in the Everglades, and go to this lecture, it's free, please go to it. And it turns out that when you go to that, it's actually a company selling timeshares, trying to sell you timeshares in the Everglades. Yes, I got exactly what I agreed to, but they lied to me about what this was about. They lied to me and told me this was going to be about environmental issues in the Everglades. I never agreed to going to getting a fax that was talking about a meeting where you could advertise timeshares. Maybe if you went to the lecture and spent money going to the lecture, you'd have a claim for fraud on the expense of that. But why would you have any claim about the fax that you got? Because the FCC and the TCPA require prior express consent to get a fax advertisement. Not to get a fax. That's what the Seventh Circuit held in the AF Solutions case. In fact, the Seventh Circuit held that even if you agreed to get product information, that is still not sufficient prior express consent. But the fax invitation in this case is an advertisement under this court's prior opinion in Behringer. It's plausible that it's an advertisement, but not for summary judging. There's a difference for summary judging purposes. You have to rule that as a matter of law, any fax to a symposium put together by a drug company as a matter of law is an advertisement. And that's important. No, we just have to rule that the fax in this case was sent with permission. I respectfully disagree. You have to rule that the plaintiffs agreed to be sent a fax advertisement. Where do you get that? I'm sorry, where do you get that? I'm looking at the text of the statute. Where do you find that in the text of the statute? You find it in the FCC's interpretations of the statute, Your Honor. In the 2003 order and in 1995 order, it's not sufficient just to know that you're getting a fax. You've got to get a fax advertisement. The word express is something that is ignored here by the defendants. You have to expressly consent. Okay, I think we have that argument, but can I just ask the following question? So you said there's no difference between the way it was described on the phone call and what was in the fax. So Mr. K was injured when he found out somehow that there's a commercial interest in the telesymposium, and then that caused him some distress? No, he was injured in two ways. First of all, he never gave consent to being sent the fax advertisement, so he used up his toner and paper. I understand, but you're saying that there was consent to get an invitation to a telesymposium sponsored by Merck, and that is what he got. And you're saying that from the face of it, it does not look any different from what was there. There must be some external information he obtained that made him realize it was an advertisement, right? Only after discovery, Your Honor. By the way, the other injury was that the opt-out notice did not contain all the information necessary to opt out. Specifically, one of the things it specifically didn't include was the requirement that a person who wants to opt out include the telephone number of the fax machine that shouldn't be sent the faxes anymore, and that is a real injury because it's a procedural violation that's meant to protect against the very injury the TCPA was passed to prevent, which was getting fax advertisers when you don't want them. Here, they did not disclose that in order to have an effective opt-out notice, you have to tell them the phone number. I didn't think you were complaining about the part of the... It's part of the... For unsolicited faxes, you have to show that the opt-out notice was insufficient. Right, but that argument depends on your prevailing first on the argument that this was an unsolicited fax, right? Well, yes. It's not unsolicited fax, unsolicited fax. So, in order for the opt-out notice obligation to attach, it first has to be that he didn't consent to a fax advertisement. I'm saying he consented to this, just to receive an invitation to a telephone symposium sponsored by Merck. He received an invitation to a telephone symposium sponsored by Merck, and I'm saying since you say that you can't tell from the face of it that it differs from what he consented to, then how did he even discover that it is an advertisement as opposed to precisely the invitation to which he consented? Your Honor, he discovered it through discovery. As this court in Bollinger made clear, you can get to discovery when you get one of these fax like this from a drug company because it's plausible that it could be used for advertising, but it doesn't establish as a matter of fact. To the extent that it is plausible, that plausibility is plainly known to him. So, he got what he asked for, and any implications that might come after that this was an advertisement, any reasonable doctor would have known. So, I must say, I just do not understand your case. Your Honor, I respectfully disagree. Okay, Mr. Bailyn, you've reserved time for rebuttal, so we will hear from you again, but let's hear first from the appellee, and then we'll come back to you. So, the appellee, Ms. Reinhart. Good afternoon, Your Honors, and as MedLearning has ceded their time to Merck, I'll be handling the argument for both of the defendants here. I don't have a whole lot to add to the questions that the court has already asked. I think when Your Honor asked, how did the text of the fact vary from the script, Mr. Bailyn responded, not at all. That is this case. This is an extremely unique situation where a single fax was sent. Before that fax was sent, a person in person called the company, asked if the individual wanted to receive the invitation to the seminar sponsored by Merck, and one hour later sent the fax to the seminar sponsored by Merck. That was exactly the same as the script. Under any definition of prior express consent, this fits it. Typical TCPA cases deal with some kind of consent, typically dated years earlier, relating to another matter. Counsel, suppose that the fax had said, and they had said to, do you want to receive a fax which is to something that will not have an advertisement or a sale of product in it? And then the person receives the identical fax, and with a statement on that fax that says, no sale of products will take place at this date. The person gets exactly what he asked for, and yet there is some misleading there, isn't there? Your Honor, arguably, I don't agree that that matches the fax here, but nevertheless, that's not a type of injury covered by, I apologize, Your Honor, I didn't mean to interrupt. In this situation, I'm just wondering whether you are arguing something which is too strong when you say that somebody gets the fax that they asked for, if the fax that they asked for is clearly misleading in a way that the person would not know, whether that might not be something under Kafka. But as I say, it's not this case. Right, Your Honor, it is not this case, but I don't agree that that would be an action recoverable under the TCPA. The TCPA regulates the receipt of an unwanted fax. To the extent they're saying they got a fax and someone could have been injured if they'd gone to a program and something else happened than they were expecting, that might be covered by a consumer fraud cause of action if they had actually attended and suffered an injury. But it isn't the type of claim that is covered by the TCPA. I mean, you can imagine the cases where the advertising piece of it might be unexpected. So let's say they called up and said, we'd like to invite you to a golf tournament for charity. Will you consent to an invitation? And then he consents, and then he receives a fax that invites him to a golf tournament for charity, but has all sorts of branding about some new drug that Merck is promoting all over it. There's an advertising component to that fax that he did not consent to. Wouldn't there be in that kind of a case? It's possible. I think each case would be determined on the facts of what happened and what the facts actually said. So in this kind of a case where he's asked to be invited to a telesymposium sponsored by Merck, and he doesn't expect it to have that kind of branding or have that kind of promotion of drugs, why is that different from the case with the unexpected advertisements? Well, I think in the factual scenario, you gave the invitation to an invitation to receive the fax did not match the content of the fax. In fact, there was branding on the fax itself, but not in the script. Here, the level of branding is exactly the same. It disclosed that this is a seminar relating to something that Merck does, which is sell drugs for the clinical treatment of two disorders, and the fax itself verbatim matches that. It is an invitation to a telesymposium sponsored by Merck regarding the clinical treatment of two disorders. This is sort of like inviting you to a dinner sponsored by Pepe's Pizza, and then you say you're surprised when you get an invitation that preferences Pepe's Pizza, and you have no idea that they might talk about Pepe's Pizza during the dinner. It is, as one of your honors pointed out, obvious to anyone receiving this type of information that, you know, medical clinical treatment information, including the defendant's own products, might be discussed. Okay. There was another issue that was raised on appeal, which was the denial of the class action. Does that issue become moot if we agreed with you on the summary judgment dismissing this individual's claim? It does, your honor. Okay. I would just like, it doesn't sound like there are any more questions. I would only like to make one further point on plaintiff's reference to the Barringer case. In that case, there was no consent whatsoever that was obtained by the defendant. The only question was whether this was the type of material for which consent would be required, because there was not any consent protocol. So it's a very, very different situation, and, you know, left open the possibility that the defendant could rebut the presumption that this was advertisement. But this is nothing to do with our case. Thank you. Okay. Thank you, Ms. Reinhart. Let's hear from Mr. Bellin again for rebuttal for three minutes. Thank you, your honor. I think that basically if the court rules for the defendant in this case, basically what it's doing is it's encouraging companies to send out misleading, to ask for permission in misleading ways, which basically violates the whole purpose of the TCPA. People are not supposed to be misled into what these symposia are about. That's the whole reason why there's the pretext doctrine that the FCC has recognized, is that there's a recognition that very often companies try to use a pretext to get people to come down to meetings or symposia or whatever it is, presentations, and then all of a sudden surprise them and start talking about the drug, the products of the company. I mean, if we rule for the defendant here, that it basically undercuts the whole pretext doctrine, which this court has recognized in Loringer. I don't think, your honors, while you may say it's possible that someone could understand that drugs are being sent, I think it's a law very far away from saying that as a matter of law, if someone is told that there is going to be a symposium about a disease state sponsored by a drug company, that that means that the person agrees to get that, that that means the person has expressly agreed to get a fax advertising, then I think we've cut out a lot of the protection that the TCPA provides. I don't think that that's what Congress meant to do. In fact, in Loringer, this court recognized that it found it plausible because it said it supports the whole purposes of the TCPA to prevent this sort of pretextual thing. And so basically, we'll be encouraging companies to mislead and dupe people into agreeing to getting things. And I don't think that that's something that the TCPA supports, and I don't think it's a matter of law. One could conclude that a drug company sponsoring something means that they're going to be talking about the drugs. If they sponsor a golf tournament, as Judge Menasci mentioned, and said, come to our golf tournament, we've got great people there, Tiger Woods, et cetera. And you get there, and before the golf tournament, they start talking about Merck's drugs and how great they are, and why that allows them to be able to have the golf tournament, to sponsor the golf tournament. I would posit that that violates the TCPA, even though you agreed to get an invitation to the golf tournament, even though the invitation you got simply said that it's about the golf tournament. It's more misleading to not say in the invitation that there are going to be drugs advertised there than the hypothetical, I believe, Judge Menasci made, where there's actually advertising on the facts itself. So it's our position, Your Honor, that I don't want to belabor it, that this is not a case where summary judgment was properly granted to the defendant in light of the most favorable to the plaintiff. As for the classification, go ahead. I'm sorry. Okay, Mr. Bitt, you want to say one final point about classification, and then we're past time. All I want to say about classification is that the affirmative evidence shows that they used this uniform script, and it's a uniform question that applies to the entire class as to whether that uniform script is sufficient to inform them that they're agreeing to get a fact advertisement. And the defendants came forward with nothing to show that they ever informed anyone in the classes or the plaintiffs that they were sending out a fact advertisement. Thank you very much, Your Honor. Okay, thank you. Thank you, Mr. Bailyn. The case is submitted. And because that is the last argued case on the calendar for today, we are adjourned.